All rise. The court is now in session. Honorable Justice Robert E. Gorman, please rise. Good morning, all. Please be seated. With the lawyers, we're going to argue the case. Please approach the bench and introduce yourself to the court. Good morning, Your Honor. Josh Vincent on behalf of Zurich Insurance Company. And Pete Long from Motorola Solutions, she's going to say. And how much time will the appellant need for rebuttal? I would like to reserve two minutes, Your Honor. Okay. Let's proceed. Good morning, Your Honors. The question before the court on this appeal is whether there are limits on insurers' right to invade its policyholders' privileged documents under the guise of the Common Interest Doctrine or Cooperation Clause in the policies. Let me ask you this question. Did the trial judge ever have an N. Cameron hearing and look at those documents? The first trial judge, Judge Pierce, now in this court, did in fact review the crisp documents as part of the first trial. Judge Brennan has not looked at those documents. So she made this ruling without ever seeing the documents? That is correct. According to Zurich, it doesn't matter why documents were created, when they were created, or even what their purpose is. According to Zurich, they get the documents merely because they claim they're relevant. We would submit that this extreme position is not now and never has been in Illinois law. Your position is here that these are privileged documents? They are privileged documents. They are privileged in work product. And very importantly, they were prepared more than a dozen years before the lawsuits at issue in the underlying claims for which coverage is sought now. The crisp documents, there are really two categories of documents. There are the securities documents, the S-1s, which are public securities filings. And they're what are referred to as the crisp, or clean room safety program documents. Those are the two sets of documents. The S-1 filings were prepared in 2003, so about five years before Motorola got sued in the clean room actions. The crisp documents were prepared in 1996, about a dozen years before Motorola got sued. So it's your position that every one of these documents are privileged? Well, the securities filing documents are very limited. It's securities advice provided by Motorola in-house lawyers to Motorola about its S-1 filing in 2003, when it split off the semiconductor division from Motorola. The crisp documents, there's lots of documents that were produced. I mean, Zurich has the entire underlying case record. So all the factual documents that are being litigated in the underlying actions, Zurich has all of that. What they're seeking here are the crisp documents, which are attorney-client privilege memos prepared in 1996 in connection with an investigation by Motorola. Yeah, but my question to you is, is every, is it your claim that every single one of these documents is privileged? Every single one of the crisp documents? There aren't very many of them. Yes or no? Yes. That's our contention. Okay. Waste management, which is the crux of the dispute here, doesn't really provide guidance here. We're off on uncharted waters. The reason is that, unlike in waste management, when these documents were created in 1996, there was no duty to cooperate. There was no common interest between Motorola and its insurers. There were no claims to defend. There were no suits to defend. There was no interaction whatsoever between Motorola and these insurers in 1996. These are private privilege documents prepared by Motorola for its own purposes, not to defend the litigation. Waste management, which has been the law for a long time in Illinois, is in fact a fairly limited decision. The Illinois Supreme Court did not, as Zurich argues, broadly eliminate privilege. Rather, the specific facts in that case are what are key. In that case, the insurer sought defense counsel's files. The underlying cases had been settled, and the insurer sought those files to analyze whether or not the settlements were reasonable in light of the liability the policyholder faced. The Court of Appeals and the Supreme Court ultimately entered production of defense counsel files. So these were documents that were actually prepared by defense counsel as part of defending the underlying cases. Waste management doesn't involve any documents like this that were prepared a dozen years before litigation was filed for a completely different purpose. I'd like to speak for a moment about what the CRISP project was, because I think it's important to set context on what these documents were and why they were created. In 1996, IBM, which, like Motorola, is a semiconductor manufacturer, was sued in cases out in California. Motorola came to learn of those cases and did an analysis on whether it might have any exposure, and more importantly, whether its practices in clean rooms were safe and reasonable based on industry standards. That work, which concluded in 1996, involved ultimately an analysis and recommendations by its outside counsel. After that work was done in 1996, absolutely nothing happened for a dozen years. In 2008, Motorola was sued in the underlying clean room actions, which were pending in the circuit court below. Upon receiving notice in 2008, what did Zurich do? It denied coverage on an array of grounds. One ground on which it denied coverage is that Motorola allegedly released all these claims. That issue was tried to Judge Pierce. It came up to this Court on appeal.  Zurich has never been involved in the defense of these cases. It's not trying to help Motorola defend the cases. It's not seeking this information to assist in the defense. It's seeking this information to use it against Motorola. We said that that's very different from the situation in waste management. Well, isn't notice an issue? Well, notice is an issue. Under all insurance policies, there's a notice clause. And do some of these documents provide information on notice? We assert they do not. And that really goes to what the notice requires. Can I ask you a few questions for one second? I'm so sorry. Even if the documents do go to notice, isn't your position that they're still not discoverable? Because the underlying suit is still pending, and the issue in the underlying suit is the same, and the decision shouldn't be made in this summary judgment motion, but should be tried in the trial court first. That is correct. That is one of our two positions as to why these documents aren't discoverable. The first is that they fall outside waste management because they're not defense counsel documents, they're not defense counsel files. These were created by a separate process a dozen years before there was any claim to defend. Second, what your Honor said is correct. The underlying cases, the tort cases for which coverage is being sought, the clean room actions, involve exactly the same issue Zurich is trying to gain evidence on here. The question is, what do Motorola know then? Not surprisingly, the tort plaintiffs in the underlying cases are litigating that precise issue. They're trying to litigate, they're seeking punitive damages, they're seeking liability against Motorola. They're trying to litigate the issue of what Motorola knew when about the risk to the unborn children of its workers. So it is the same issue, and any argument that Zurich makes that it's not seeking evidence of that same issue or litigating that same issue is simply not true. Zurich's argument is premised on waste management, so I think it's critical to go back and understand what waste management said and what it didn't say. In waste management, one critical fact the Court relied on is that the underlying cases had been settled, and this goes to your Honor's point. By the time this dispute came up in waste management, all of the underlying actions for which coverage was sought had been settled. So there's no harm to the policyholder in these issues then being litigated or in providing the documents because the underlying actions had been settled. They were done. There's nothing that was going to happen in the insurance case that would negatively affect the policyholder in the underlying actions. That's obviously not the case here. About 20 of the cases have been dismissed and are up on appeal to this Court. About 25 remain pending. Trials are scheduled for two of them in the fall of this year, and trials will continue throughout 2018 unless there's a settlement. So the underlying cases are very active, and the precise issue Zurich wants to litigate now here, but no longer when, is exactly the core issue in the underlying cases. Would you think that the trial court could stay willing on this issue until all of your cases are resolved? We think it should, and that gets to the second part of our argument that your Honor referred to, which is the Pepper's Doctrine. For more than 40 years in Illinois, there has been a rule on this issue, and we submit that that rule applies here. The rule is that where an insurer has a defense that involves factually overlapping issues with the underlying cases, it cannot litigate that issue while the underlying cases are pending, and that's the Pepper's Doctrine that's been the law since 1976. And the important question is why is that the rule? And there's a very simple answer to that. It is the rule because an insurer has a contract with its insurer, and it's not supposed to take it as a duty of good faith. It's not supposed to take actions that hurt its policyholder in underlying litigation for which coverage is sought. And so Zurich here is trying to litigate, as I said, factually overlapping issues right now while the underlying cases are pending. Illinois courts have said for decades that is exactly what Zurich cannot do. And the reason for that is because it's unfair. It's unfair to the policyholder. They should not have to fight a two-front war with their carrier on the one side and the plaintiffs on the other side on the same factual issues, but that's the position Zurich is trying to put their role in. I'll talk for a minute about the securities documents because they're important really for context. As I said at the beginning, these were documents created in 2003 when Motorola was spinning off its semiconductor division, which is the division involved in equilibrium actions. And they filed what's called an S-1, which is a public securities filing. And the S-1, in connection with preparing the S-1, some lawyers at Motorola, in-house lawyers, gave some advice on what the S-1 should say. Zurich claims that it gets those documents because there's no privilege applicable. The S-1 documents have nothing to do with the defense of the equilibrium actions. They're securities advice provided by Motorola's in-house lawyers. One can pick waste management apart and read every sentence and every word, and there's no support in waste management for producing those kinds of documents that have nothing to do with the underlying case to an insurer. I'd like to come back for a second to the timing issue. Motorola's position is not that Zurich will never get these documents, although it could be that. Zurich may get these documents. The question is, can it get them now? And Motorola submits that it cannot get the documents now because of the Pepper's rule. At some point, under Illinois law, Zurich may be entitled to litigate the factually overlapping issues that are presented by its late notice defense. But under the Pepper's doctrine, it cannot do that now. And when do you anticipate? Are you projecting when those documents might be made available? Sure. Well, the underlying cases, Judge Selganic is handling the underlying cases, and there are two cases set for trial, and those cases eventually got resolved. They're a series dismissed, and there's now a schedule in place, the underlying cases along the following lines. Two cases are set for trial this fall. If one settles, the other will try. If that one settles, then you just move on to the next ones. There are about 20 or so cases that remain in discovery. Fact discovery is ongoing. It's supposed to close out by roughly the end of this year, and then there will be further discovery in 2018, and Judge Selganic has indicated that he intends to get those cases through trial starting at the end of 2018. Obviously, there could be settlements. There's lots of things that can affect this. All you need is one trial. All we need is one trial. All you need is one trial to resolve this issue. Right, and there is a trial set for the fall. There are two cases set for trial for fall of this year, and I don't see any reason to think that either won't be tried or resolved because Judge Selganic has made it very clear to defense counsel and to plaintiffs that those cases are going forward for trial no matter what. So I don't see any reason for a delay, that there's going to be a delay in those cases. One further point I'd like to make, which really goes to the Common Interest and Cooperation Clause. Zork argues that Motorola has a duty to cooperate with it in respect of these documents, but going back to 1996, when these documents were created, there was no relationship. Yes, Zork was Motorola's insurer, but in 1996, there were no claims to defend. There were no lawsuits. There was nothing going on. So a duty to cooperate is a contractual duty. It arises when there's a claim made under a policy. In 1996, there was no claim being made, so no duty to cooperate existed at that time. The same analysis applies to the Common Interest Doctrine. Zork makes much of the fact that the Common Interest Doctrine applies here. But the Common Interest Doctrine, as Waste Management makes clear, applies when a party essentially represents the interests of two parties whose interests are aligned. The typical situation where it arises is when a lawyer represents two clients who have common interests. Another situation, sometimes but not always, is when an insurer and a policyholder have interests that are aligned. There's no common interest here. Zork has denied coverage. It has left Motorola to fend for itself. It has told Motorola in no uncertain terms that it's not going to pay these claims without, quote, forcing it to do so. And, in fact, it's taking actions that are directly contrary to Motorola's interests. The trying to litigate the issue of Motorola's knowledge and risk of clean rooms while the underlying case is pending is the antithesis of being aligned with Motorola. We could not be more unaligned with Zork. And so any argument that there's a common interest here is a fallacy. There's no interest whatsoever that is common between Motorola and Zork at this time. You want to save some time for rebuttal? Yes. Thank you. Good morning. May it please the Court. Josh Wentzel on behalf of the defendant, Zork Insurance Company. Associated insurance companies joined in our brief, too, so the arguments that I'm making here apply with respect to Associated as well. I'd like to start off with the question that you asked, Justice Lampkin, about the issue of prematurity and whether we're trying to litigate the same thing. A little because the air is competing. The question of whether we're trying to litigate the late notice defense in this case. And I think it's very important to start out with looking at the procedural posture of this case because if you look at it closely, first of all, the issue of the late notice defense is not before this Court. What's before this Court is a discovery order. And if you look procedurally, what's happened here? Motorola filed a complaint for declaratory judgment, and if you look at paragraphs 34, 39, and 44 of their complaint, Third Amendment complaint, you'll see that they specifically allege, affirmatively, that they gave Zurich timely notice. So they're the one who have put at issue the fact that they've given timely notice. That is a reason they have to do that because this is a contract case. And in a contract case, if you're going to move for summary judgment, which is what Motorola has done, remember, Zurich and the insurers here have not moved for summary judgment in this case. It's Motorola who has moved for summary judgment, which means they have to prove the allegations of their complaint that there's no question of fact as to any of those allegations. Well, if they've specifically alleged in their complaint that they've given timely notice, then one of the issues we have to defend is whether that's true or not. Now, we don't really, and really, that even overstates it. We don't have to defend whether it's true or not. What we have to determine is, is there a question of fact over that? That does not ask the circuit court, Judge Brennan, to decide whether there was late notice or not. Judge Brennan really has two options in the procedural posture of this case. There's a motion for summary judgment. It affirmatively alleges they gave timely notice. The judge will either decide on summary judgment that they did give timely notice, based on whatever evidence they choose to put in, or the judge will find that there is a question of fact over it. Because the purpose of summary judgment is not to decide a question of fact. But, counsel, aren't you going to use the documents that you get, hopefully, if there's something in them, to defend against the fact that they got timely notice? Isn't that what you're doing? Only to raise a question of fact as to whether it is or not. And you've got to keep in mind, again, here, we don't know what those documents are going to show. For all we know, those documents are worthless. They may tell us nothing at this point, and we may not be able to create a question of fact. But when he's talking about this issue of prematurity, that somehow we are trying to harm them in the tort case that's pending, by litigating what they knew and when, that's wrong. Because we're really not. All we're here trying to do is show us the documents, and does it raise a question as to whether they knew there was the potential for liability? That, I think, is at most all we would have to show, is whether they thought there was the potential for someone to make a claim. That's it. That's not asking the court to decide what they knew and when about whether people were injured and so forth. It's simply a question of, did they think there was a possibility that someone might make a claim? And then the court can say, you know what? I can't decide whether the notice is timely under these circumstances. Motion for summary judgment denied. It would be fundamentally, I'm sorry, did you have a question? Yeah, I was going to, well, what came to my head is, how does that relate to the common interest doctrine? If you're touching on the issue, that's going to be the issue in the underlying case. Aren't you going against the insured, just like the alleged victims? No, not at all. In this context, all we're trying to indicate is that there is a question of fact over what they knew and when. Whether they gave us timely notice, not trying to prove that they knew something back then. We don't have to prove that. It's not our burden. And that's, you know, it's an important point because this court issued a recent decision a couple weeks ago, the Century Insurance case, completely different procedural posture. Justice Graybank, you were the author of that case. You know, in that instance where you have a prematurity problem, what the insured does, someone in their position is, they move to strike or dismiss the allegations that they claim are premature. Now, we answered the complaint with the affirmative defense of late notice and we pleaded a counterclaim for it, but they've never challenged that. So the point here is that this whole argument about what is it that these documents are going to be used for, does it create a prematurity problem, is not really before the court. For the court to address that issue at this point would be totally advisory because think about it from this standpoint. All the judge has done below, and the judge has been very careful, and the judge has hewed very closely to the Sharp decision, the 2006 case Justice Tice authored, that follows waste management to the letter. And basically what Judge Graybank has done, right by the book, in the exact same circumstances as this case, where you have a question of the insurance knowledge being raised, in that instance what the judge says is, okay, look, I want you to narrow down the issues of what you're looking for. Right? And so we narrowed down... The opponent insists that waste management is not applicable here. I'm sorry, I didn't hear you. The opponent insists that the waste management case is not applicable here. I... And he started out that way. I don't see how he can credibly make that argument. I think the waste management case is about as close to being on all fours with this case as you could possibly get. Waste management involved an insurance coverage issue that involved a question of notice. The insurance company did raise a C-rate in the first paragraph, practically, of Justice Freeman's decision. He says that one of the reasons the insurers challenged coverage was because they said they weren't advised of the claim in a timely manner. That is one of the very reasons they were asking for the documents that existed between the insured and their defense counsel in that case. That's exactly what we're asking for here. He tries to draw the distinction that somehow the lawyers who were working with him in 1996 were not their defense counsel, that nothing was going on, I think is what he said, and that what they were working on had nothing to do with this. If you take a look at page 1122 of the record, which is Motorola's memorandum in opposition to our motion to compel the production of these documents, they explain exactly what those documents relate to. And this is a quote from their brief. Potential liability issues, if any, related to the cleanrooms and recommendations related to preparing for cleanroom litigation. That's exactly what was going on in Waste Management. The documents that the insurance company was looking for were ones that their lawyers had been preparing or had prepared in the course of defending the case that the insurer was seeking coverage for. So really, I think they're almost identical cases. Well, in Waste Management, weren't they seeking the files of the lawyers? And that's what we're seeking. We're seeking the files of the lawyers who were helping them prepare for the defense of the case. Whoops. You know, I warned people that you'd better be careful of this picture. Sorry. Well, you're not seeking it exactly from the lawyers. You're trying to seek it from the client. We are seeking the lawyers' communications with the client as well as the client's communications with the lawyers. But you're not seeking it from the lawyers. You're not going to the lawyers to get it. Isn't that the difference in Waste Management? No. In Waste Management, they were asking the insured as well to produce their communications with their lawyers and their lawyers' communications with them. I thought it was seeking the files of the lawyers engaged in the litigation. That is. That's true, but through the insured. The lawyers were not parties to the case in Waste Management. The only parties to the case in Waste Management were the insurance company and the insured. And the motion to compel the production of documents in that instance was directed at the insured and was asking the insured to produce the documents that the lawyers had created in connection with the defense of that case. And that's also true in the Sharp decision. Fifteen years later, you've got an almost identical circumstance where the insurance company is asking the insured to produce the records of the communications that the insured had with their lawyers. That's exactly what we're looking for here. So it's the same. The cases match up almost identically. I don't see that there's any valid distinction based on the fact that it's a different set of lawyers. As you can see from the section that I identified, page 1122, at their motion, you can see that they are specifically talking about defending the potential liability of these cases, which is exactly what they're asking us to pay for. So the identity, I think, is present. I do want to emphasize that in addition to following what Justice Tice outlined in the Sharp case with respect to narrowing the issues, the court here has also required the parties to enter into a protective order. So from the standpoint of is there some risk to Motorola with respect to the production of documents, there's none. Both Waste Management and the Sharp decision specifically talk about the use of a protective order to make sure that the documents don't fall into the wrong hands, that they don't cause any harm to the insured in the defense of the tort case, again, depending on what they show. I can't emphasize enough here that we are dealing with a discovery order here. We're not at the stage yet where we know exactly what arguments are going to be made in connection with the argument that Motorola is making that they gave timely notice. We don't know what those documents will show. We don't know what those arguments will be. Right now, it's purely a question of discovery. They made a motion. Their motion affirmatively says, we gave timely notice. We satisfied all the conditions of the insurance policy. I honestly don't see how it would be fair to any litigant, whether it's an insurance company on the other side of this case or any other party, to have to defend a summary judgment motion that says, we gave you timely notice and satisfied all the conditions, and you're not going to give us any discovery on to that question? What about the statement or the suggestion that everything be stayed and litigating whether you have to defend until at least one of those cases is tried and that issue will not be there any longer? It's certainly possible, but at some point down the road, someone could ask, would it be stayed? The U.S. has. We did ask that. It was denied. That motion was made and denied. We did at one point in the case, early on, about four years ago. We suggested that the case be stayed, and then we all opposed that motion. And so the case continued on. Now, what I suspect would happen is, if you follow the procedural posture that I was talking about initially, they've made a motion for summary judgment. We defend that motion on the basis that there's a question of fact over whether notice was timely or not, and the judge says, I can't decide that question because it's summary judgment. All I can say is there's a question of fact. We're going to have to have a trial. Then maybe at that point, the issue of whether there should be a stay to hold that up and wait until the underlying cases are resolved might be ripe. Maybe that's when it will arise. But if you look at the Sentry case that you decided a couple weeks ago, that was different, because in that case, the insured actually moved to dismiss the insurer's case on the basis of prematurity, and the judge stated, and I brought the issue up in front of you, I'm going to appeal for the stay. Then you can talk about the question of prematurity. But in the procedural posture that this case is in right now, we're not there yet. We're not there yet. So you're not really interested in the stay, are you? No, at this point, I don't think we are. I don't think we need to be. At one point in time, I thought maybe that might have been necessary. But at this point in the case, I don't think a stay is necessary because we're in the process right now of trying to defend against their summary judgment motion, and all we've asked for is some documents that we can use to try and make a response. I think that's simply fair. That's why we're dealing with this. This has come up in the context originally of a Rule 191B order that said they're going to stay the briefing on their summary judgment motion so that there's some opportunity to do some discovery on this narrow point, but they've put an issue. You've got to keep in mind, he talks about this in the context that he keeps calling it a late-notice defense. We don't have to prove a negative here that they failed to give timely notice. Right now, in the posture of this case, it's their motion for summary judgment, and it's their position that they gave timely notice. Let me ask you this. Do you think that the trial court should look at these documents in an in-camera hearing to make a determination whether privilege is a defense? I don't think that that is necessary at this point, and I'll tell you why. First, what would be the purpose? You don't know what's in the documents. The court doesn't know what's in the documents. So the court is asking or ordering to produce documents that they've never looked at? Well, the documents, I don't think there's no dispute over the fact that the documents relate, as they said in their own briefs, to potential liability issues in the underlying case and recommendations related to preparing for claimant litigation. Well, that's the conclusion, isn't it? That's their description of their documents. All right. So they've described them that way. So there's no question about the relevance of the documents. Now, Judge Pierce, when he looked at the documents in camera before the first appeal in this case, he made a determination that he didn't think they were relevant to the release issue that you decided in that case. But he specifically said that if we were talking about the coverage case, which we're at now, he thought they probably would be relevant. He gave that indication. He didn't rule on it, but he said that's a different question. And now that they've made it very clear, they've asserted a blanket assertion of privilege here. It's not like they've said some of this is factual and we'll give you that and some of it's impressions, mental opinions, theories that we're not going to give you that we say is privileged. Then you might have a reason for in-camera inspection. But they haven't done that. They haven't tried to segregate out what's in those documents. They've simply said it all relates to the potential liability in the claimant cases in 1996 that we were looking at, and it's all privileged. That was his answer to your question. Well, they're posturing their position. You're posturing your position, and we have to sort it out. Isn't that what you're saying? Yes, indeed you do. Okay. But I don't feel that we're posturing on this one, okay? Because the fact of the matter is that they have asserted a blanket privilege. They haven't tried to segregate anything to say that there's something that the judge needs to look at either to determine the relevance of these documents or to identify parts of them that, for example, maybe relate to the insurance coverage dispute that we're in right now. Now, if that's in those documents, we acknowledge that that would not be discoverable. That would be privileged because there's no common interest on that. We're adverse over the question of whether these insurance policies apply to this loss. But where the common interest exists is in being unified against the plaintiffs in that tort case because, you know, hey, someday who knows, we may be called upon to pay it. We are just as interested in making sure that that case goes well for Motorola as it is for us. We do share the common interest in defending that potential liability if there is one there. So the common interest does exist in this case, but they haven't raised a question that these documents contain anything other than what we have a common interest in, which is the defense of that tort litigation. They have not contended that these documents contain anything about the insurance coverage dispute. That would be a reason for an in-camera inspection. And I think Judge Brennan recognized that. You know, I do want to emphasize, too. You've got to thank me. I'm going to close it up right now for a minute, and then I'll get out my mop and clean up this mess I made. You know, Justice Freeman made it very clear, and so did Justice Tyson, the two decisions that we think control this case is that the privilege that they are serving is the exception. It is not the rule. The general rule is to encourage full disclosure and the ascertainment of the truth. And the issue that they have placed here in question by their motion for summary judgment is, did they give us timely notice? And we are entitled, as a litigant, defending against that motion to ascertain the truth. That's what this is about, and that's what those documents concern. And the Waste Management case makes it very clear that they had no expectation of confidentiality in those documents when they created them. They entered into that relationship with those lawyers to investigate this in 1996, which is five years after the Waste Management case was decided, so they knew that the documents they were creating then between them and their lawyers was information that was not confidential as to their insurance company. That policy was in effect at that time. So we would ask that you affirm Judge Brendan's order requiring them to produce these documents. Unless there's any questions? Thank you. No. Just take the plastic. Just a moment. I'd like to address just a few brief points in rebuttal. First, Zerk is being coy when it says that it's not trying to litigate what Motorola knew, but Your Honors don't have to listen to me. You can listen to them. It's on page 16 of our brief. These insurers, meaning Zerk and Associated, will similarly focus in this action, meaning the coverage action, on what Motorola knew about the possible dangers associated with workers' exposure to chemicals and when it knew it. So you don't have to listen to me. That's what they said. So any suggestion that they're not litigating Motorola's knowledge is simply not true. Second, Zerk places a lot of emphasis on the Sharp case. I am completely confident that this Court, having read the Sharp case, will understand that it's often a world by itself. In the Sharp case, there's an exclusion that puts directly at issue the general counsel's knowledge. In that case, there really isn't an argument about producing general counsel's files or any other privileged files that show the company's knowledge because by express contractual provision, the insured waived any ability to make that argument. So Sharp has nothing to do with this case. There is no such language in Zerk's policies. Third, on race management, the argument is that race management gives them a complete ability to go spelunking through all of Motorola's files, privileged files, no matter when they were created or by whom. There is no such language in race management. Race management will require the production of files prepared by defense counsel to defend that, the actions for which coverage is sought. A private investigation done by Motorola 12 years before it was sued is not the same thing. One other point that I think is worth delving into a little more. The issue here is late notice of occurrence. Zerk cannot argue that it got late notice of these lawsuits because as soon as a lawsuit was filed against Motorola that involved Zerk, prompt notice was given.  What is an occurrence? Because it's critical here. An occurrence is defined in the policy as bodily injury. So what must Zerk prove to prove its late notice defense? It has to prove that bodily injury occurred and Motorola knew about it. Because that's what an occurrence is. So to sustain a defense, and it's their burden to sustain, not Motorola's, a late notice defense, they have to prove that Motorola knew it was injuring people and failed to give notice. What does that require proof of? It requires proof that Motorola knew it was injuring the children, the plaintiffs who now sued them, at the time in 1996 or whenever Zerk claims that it was late. All the way back to the notice of occurrence language, the question is, they are trying to prove that Motorola knew it was injuring people. So the overlap between the underlying cases and the coverage actions is complete. The protective order. One last point. Yes, there's a procedure in air law for protective orders. We understand that. Judge Brennan told us to enter into one, and we did. Protective orders don't protect everything. They may keep the plaintiffs out of getting access to our privilege documents in some circumstances, but that's not the whole shooting match here. If Zerk goes forward, they're trying to take depositions, so they want to take depositions of Motorola in the police. I thought that was the point. Not completely. Because let's say that a witness is deposed in the coverage action. So Zerk, as they have done, they put a corporate deposition notice, and Motorola has to put a witness up for deposition. According to Zerk, they could take all of Motorola's privilege documents and question that witness using those documents. What happens next? That witness gets deposed in the underlying case. How does that witness, he could get cross-examined on his prior statements, the plaintiffs will try to seek access to that transcript. He or she could get cross-examined on whether or not he or she has gained factual knowledge from reviewing privilege documents in the earlier depositions. This is why the Pepper's Rule exists. It exists because it's a morass to let the insurers litigate coverage offenses that directly intertwine with the underlying factual case, while the underlying factual case remains pending. That is why Pepper's exists, and this approach shows what a morass it would be that Zerk is creating here. Any other questions? Thank you, Your Honor. We appreciate it. I want to thank the lawyers for a wonderful presentation, good briefs, and we'll take the case under advisement. Thank you very much.